918 P.2d 1185

Randia FOWLER, Plaintiff–Appellant,

v.

KOOTENAI COUNTY, a political subdivision of the State of Idaho, Defendant–Respondent.

No. 21615.

Supreme Court of Idaho,
Coeur D'Alene, October 1995 Term.

May 8, 1996.

Rehearing Denied July 22, 1996.

---

Janet E. Jenkins, (argued) Sandpoint, Mosman Law Offices, Moscow, for appellant.

Ramsden & Lyons, Coeur d'Alene, for respondent. Marc A. Lyons, argued.

SILAK, Justice.

Randia Fowler (Fowler) brought suit against Kootenai County under the Idaho Human Rights Act, alleging the Kootenai County Sheriff's Office (Sheriff's Office) was a hostile work environment which unreasonably interfered with the terms and conditions of her employment. By special verdict, the jury found Kootenai County neither unlawfully discriminated against Fowler nor retaliated against her through adverse employment action.

Fowler appealed, asserting the district court misstated the law on sexual harassment in its instructions to the jury and that the court erred in limiting the testimony of plaintiff's expert Larry Satterwhite (Satterwhite). We vacate and remand.

## I.

## FACTS AND PROCEDURAL BACKGROUND

In September of 1984, the Sheriff's Office hired Fowler as a jailor and subsequently transferred her to the patrol division in 1986. Shortly after joining the patrol division, the vulgar language used by some of the officers offended Fowler. Upon the completion of her probationary period, Fowler complained to her supervisor about the vulgar language and for a short time the language improved. In later discussions with her supervisors she was told that as a police officer she "could not be offended by vulgar and profane language."

Fowler objected to a 1989 (and later a 1990) Hawaiian Tropics swimsuit calendar hanging in the sergeant's office, as well as a "condom plant" which was on a sergeant's desk. Attached to the plant was a sexually suggestive poem. In addition, Fowler was offended by comments such as "What's the matter, aren't you getting enough at home Randia?" or questions to her husband such as, "isn't Randia servicing you enough at home?" After allegedly discussing these objections with her supervisor, the sergeant's office posted a memo which stated that any further access to the sergeant's office had to be by invitation only. Sergeant Shirley denied the memo had any connection to Fowler's complaints, testifying that he posted the memo in an effort to prevent officers from milling about the office and doorway.

Sheriff Clegg had in place an "open door" policy which allowed officers to circumvent the chain of command in order to discuss "personal" problems with the Sheriff. Fowler placed notice with her supervisor that she wished to discuss a "personal matter" with the Sheriff. This notice was approved up through the chain of command. In their discussion, Fowler renewed her objection to the vulgar language, noted some officers were making a habit of discussing their sexual exploits, and some referred to the female dispatchers as "bitches" or "on the rag." She complained about her supervisor's comments that neither she nor her husband was qualified to be a Field Training Officer

(FTO). She also addressed her concerns about the FTO application process and the future posting of training opportunities.

Shortly thereafter, Sheriff Clegg determined Fowler had not discussed "personal" matters, but rather had discussed "personnel" matters. As a result, Sheriff Clegg issued Fowler a warning for violating the chain of command. No loss of pay, seniority, or status accompanied the warning and it would be removed from her file if no other warnings were issued within the year. Sheriff Clegg also ordered Captain Thompson to look into Fowler's charges of sexual harassment. Fowler testified that in a meeting with Captain Thompson she gave him general examples but refused to give the specifics he demanded because the subject matter embarrassed her.

In October 1989, a secretary in the Sheriff's office circulated a memo entitled "The Rules."[1] The memo was placed on the briefing board and read at the morning briefing. Fowler complained to Lieutenant Chaney, who immediately removed the memo. In response, the Sheriff circulated a memo condemning such conduct and affirmed his commitment to an environment free of sexually offensive remarks.

Following this incident, a series of events occurred which Fowler believed were in retaliation for her complaints. She received what she perceived to be the worst evaluation of her career at the Sheriff's Office. She and her husband, who was also a deputy in the Sheriff's Office, were not allowed to take vacation time together unless she switched her shift for an entire rotation. She alleged other officers were slow in responding to her

calls for back-up. On two occasions a red light bulb was placed in her box. She was assigned to a position which sought to provide additional service and increased visibility to the outlying areas of the county.

Upon learning of this last assignment, Fowler became so angry and frustrated that she took a one week stress leave. During this stress leave, her doctor treated her for anxiety and insomnia. While on leave, Fowler's patrol car was picked up from in front of her house, a procedure she asserted was unusual and unprecedented.

When Fowler returned to work, the Sheriff's Office ordered her to submit to a psychological exam to ensure both her own mental health and that she was fit for duty. The police psychologist judged her fit to return to service.

On April 9, 1990, the Sheriff's Office initiated a one year rotational program. Four deputies, including Fowler, were temporarily transferred to other departments. The effect of the transfer was to remove the only female officer from the patrol division. Although the transfer to the civil department did not affect her salary or benefits, Fowler perceived it to be a "demotion." She refused to accept the transfer despite the fact she was told her refusal could result in termination.

Fowler filed a letter of grievance. She challenged her transfer to the civil division, alleged the transfer to be a demotion in retaliation for reporting sexual harassment, and detailed general examples of harassment (i.e., the swimsuit calendars, the condom plant, the off color jokes, and the vulgar

---

1. "The Rules" memo was addressed to all male personnel from the female staff. The rules are: (1) the female ALWAYS makes the Rules; (2) THE RULES ARE SUBJECT TO CHANGE at any time without prior notification; (3) NO MALE CAN POSSIBLY KNOW THE RULES; (4) If the female suspects the Male knows all the RULES, she must immediately change some of the rules; (5) THE FEMALE IS NEVER WRONG; (6) If the female is wrong, it is because of a FLAGRANT MISUNDERSTANDING which was a DIRECT RESULT of something the male did or said wrong; (7) If rule No. 6 applies, the Male must apologize immediately for causing the MISUNDERSTANDING; (8) The female can change her mind at any given point of time; (9) THE MALE MUST NEVER CHANGE HIS MIND WITHOUT EXPRESSED WRITTEN CONSENT FROM THE FEMALE; (10) The female has every right to be ANGRY or UPSET at any time; (11) The male must remain CALM at ALL times, unless the Female wants him to be angry or upset; (12) The female must UNDER NO circumstances let the male know whether or not she wants him to be angry or upset; (13) ANY ATTEMPT TO DOCUMENT THESE RULES COULD RESULT IN BODILY HARM; (14) if the female has PMS, all rules are NULL and VOID; and (15) THE MALE CANNOT DIAGNOSE PMS.

language). The grievance went through the chain of command and was ultimately rejected by Sheriff Clegg. On April 30, 1990, Randia Fowler was terminated on the grounds of insubordination for failing to accept the transfer.

Fowler filed suit in district court alleging, among other things, sexual harassment and unlawful retaliation. During her case-in-chief, Fowler elicited expert testimony from Satterwhite. Satterwhite began by defining the types of sexual harassment. He then gave his opinion as to whether the following factors could contribute to a hostile workplace: (1) vulgar language; (2) the placement of swimsuit calendars in the work place; (3) the placement of a condom plant in the work place; (4) sexually explicit language, written or verbal; and (5) verbalizations against a woman's menstrual cycle. Finally, Satterwhite testified as to the effect upon a person who complains about harassment and how the person is not considered a "team player."

However, the judge refused to allow Satterwhite to testify as to whether in his opinion Fowler was a victim of sexual harassment and whether a hostile work environment existed at the Sheriff's Office during her term of employment. The judge believed such testimony would have improperly invaded the province of the jury and would have been of no assistance to them in their decision.

At the conclusion of the evidence, Fowler objected to the giving of certain instructions regarding sexual harassment.

The jury returned a special verdict which answered "no" to the questions: "Did the Defendant unlawfully discriminate against Plaintiff?" and "Did the Defendant retaliate against Plaintiff through adverse employment action." Fowler appealed.

## II.

### ISSUE ON APPEAL

1. Whether the district court's instructions misstated the law on sexual harassment.

2. Whether the district court erred in limiting the expert testimony of Mr. Satterwhite.

## III.

### STANDARD OF REVIEW

The standard of review for issues concerning jury instructions is limited to a determination whether the instructions, as a whole, fairly and adequately present the issues and state the law. When the instructions, taken as a whole, do not mislead or prejudice a party, an erroneous instruction does not constitute reversible error. *Sherwood v. Carter*, 119 Idaho 246, 256, 805 P.2d 452, 462 (1991).

When reviewing a district court's decision regarding the admissibility of testimony, our standard of review is limited to determining whether there has been a clear and manifest abuse of discretion. *Mac Tools, Inc. v. Griffin*, 126 Idaho 193, 199, 879 P.2d 1126, 1132 (1994).

## IV.

### ANALYSIS

**A. The Jury Instructions, When Taken As A Whole, Did Not Properly State The Law Of Sexual Harassment.**

The Idaho Human Rights Act (IHRA) seeks to provide for the execution of the federal Civil Rights Act's policies within the state of Idaho. I.C. § 67–5901(1). As a result, this Court looks to federal law for guidance in the interpretation of the statute. *O'Dell v. Basabe*, 119 Idaho 796, 811, 810 P.2d 1082, 1097 (1991).

This Court recently considered Ninth Circuit precedent for the interpretation of a sexual harassment claim in *De Los Santos v. J.R. Simplot Co., Inc.*, 126 Idaho 963, 895 P.2d 564 (1995). Under that case's formulation, a hostile work environment claim requires proof (1) the victim was subject to sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create a hostile work environment. *Id.* at 967, 895 P.2d at

568; *see also, Ellison v. Brady,* 924 F.2d 872, 875–76 (9th Cir.1991). The work environment must be both subjectively and objectively perceived as hostile based on a totality of the circumstances. *See Fuller v. City of Oakland,* 47 F.3d 1522, 1527 (9th Cir.1995).

The instructions given at Fowler's trial made two notable deviations from this formulation and the interpretation given to it by the Ninth Circuit. First, the jury was instructed to consider whether a reasonable *person* in the plaintiff's circumstances would consider the environment hostile. Second, the instructions included a "based on sex" requirement. That is, the jury was instructed to find that Fowler's gender was the motivation for the complained of conduct.

**1. Whether an environment is objectively hostile should be determined from the perspective of a reasonable person in the plaintiff's circumstances.**

■ In the instant case, the jury was instructed to find that a "reasonable person in the plaintiff's circumstances would have found the environment to be hostile or abusive." Fowler insists that this was error and directs us to the Ninth Circuit which judges the objective prong of a hostile work environment claim from the perspective of a reasonable woman. *See, Ellison v. Brady,* 924 F.2d 872, 879 (9th Cir.1991).[2] We note that several other jurisdictions have adopted a form of the "reasonable woman" standard. *See, e.g., West v. Philadelphia Electric Co.,* 45 F.3d 744, 753 (3rd Cir.1995); *Yates v. Avco Corp.,* 819 F.2d 630, 637 (6th Cir.1987); *Burns v. McGregor Electronic Industries, Inc.,* 989 F.2d 959, 965 (8th Cir.1993).

Nonetheless, we choose to continue to use the reasonable person in plaintiff's circumstances standard. By so doing, in no way are we rejecting consideration of the plaintiff's gender in a hostile work environment claim. We simply believe the reasonable person standard is sufficiently flexible to include gender considerations while incorporating other considerations peculiar to the individual and their circumstances. However, the use of a gender-conscious standard may unduly emphasize gender to the detriment of these other considerations. It may also have a deleterious effect on the uniformity and consistency of result that the "reasonable" standard seeks to provide. *See, e.g., Radtke v. Everett,* 442 Mich. 368, 501 N.W.2d 155, 165–67 (1993).

For these reasons, we choose not to accept the reasonable woman standard employed by the Ninth Circuit and others. In this case, the jury instructions properly directed the jury to consider whether "a reasonable person in the plaintiff's circumstance would have found the environment hostile and abusive." Seeing no error in this instruction, we now consider whether a hostile work environment claim requires the harassment to be based on sex.

**2. The jury instructions misstated the law of sexual harassment by including a "based on sex" requirement.**

■ The jury instructions also required Fowler to prove the harassment "was based upon sex." A subsequent instruction stated Fowler must prove that "because of her gender, she was the object of harassment." Kootenai County argues such a requirement is consistent with IHRA's prohibition against an employee being singled out for adverse treatment because of her gender. Under its formulation, if an employer equally abuses men and women no claim would arise because both sexes are accorded equal treatment. We do not find such a result to be consistent with the policies of IHRA.

We begin by noting that the Ninth Circuit recently rejected such an assertion. *Steiner v. Showboat Operating Co.,* 25 F.3d 1459 (9th Cir.1994). In *Steiner,* the court stated, "even if [the employer] used sexual epithets equal in intensity and in an equally degrading manner against male employees, he cannot thereby 'cure' his conduct toward women." *Id.* at 1464. In addition, the Ninth Circuit previously held that "Title VII is not a fault-based

---

**2.** Although the Ninth Circuit has adopted a reasonable woman standard, the Ninth Circuit has stated that "whether the workplace is objectively hostile must be determined from the perspective of a reasonable person with the same fundamental characteristics." *Fuller v. City of Oakland,* 47 F.3d 1522, 1527 (9th Cir.1995).

tort scheme. "Title VII is aimed at the consequences or effects of an employment practice and not at the ... motivation of co-workers or employers.'" *Ellison*, 924 F.2d at 880 (*internal citation omitted*); *see also, Griggs v. Duke Power Co.*, 401 U.S. 424, 432, 91 S.Ct. 849, 854, 28 L.Ed.2d 158 (1971). We agree and find a similar aim contained within IHRA.

IHRA seeks to ensure that women and men are able to participate in the workplace on an equal footing. To require a plaintiff to prove that gender is the motivation for the conduct would run the risk of reinforcing the prevailing level of discrimination at the workplace. This case is illustrative. Kootenai County argues that the vulgar language used in the Sheriff's Office existed regardless of Fowler's presence. In addition, it also asserts that Fowler was not the motivation for the decision to place the swimsuit calendar in the sergeant's office. Thus, under Kootenai County's formulation, the presence of a "based on sex" requirement could result in a plaintiff being forced to endure the prevailing level of conduct at her workplace even though a reasonable person in the plaintiff's circumstances may find such conduct highly offensive.

We recognize that the insertion of a female into a once male-dominated field may result in drastic changes to what had up until then been considered acceptable workplace behavior. Formerly acceptable conduct and even "well intentioned compliments by co-workers or supervisors can form the basis of a sexual harassment cause of action...." *Ellison*, 924 F.2d at 880. Like the Ninth Circuit, we note that this may require employers to take affirmative steps to educate and sensitize their workforce to eliminate conduct which a reasonable person would consider unlawful sexual harassment. *Id.* However, harassers should not be able to escape liability for their conduct simply because they can show their behavior is not directed at women, but is simply in accordance with the level of conduct prevalent prior to the woman's entry in the workplace. Accordingly, we reject a "based on sex" requirement.

We have considered all other issues Fowler raises on appeal regarding the jury in-

structions and find no others which could have been prejudicial or misleading to the jury. Nonetheless, we conclude that the inclusion of a "based on sex" requirement within the instructions constituted reversible error. When taken as a whole, this error resulted in a misstatement of the law which may have had a prejudicial or misleading effect on the jury. As a result, we vacate and remand for a new trial consistent with this opinion.

**B. The District Court Did Not Err When It Limited Satterwhite's Testimony.**

Fowler argues Satterwhite should have been allowed to state whether or not Fowler was a victim of sexual harassment and whether or not a hostile work environment existed at the Sheriff's Office. The district court allowed Satterwhite to testify generally, even allowing him to state the elements of such a claim, but not specifically. The court reasoned such testimony from Satterwhite would have invaded the province of the jury and would not have been of assistance to them in their decision.

Under the Idaho Rules of Evidence, a properly qualified expert is allowed to render an opinion, otherwise admissible, which embraces an ultimate issue to be decided by the trier of fact. I.R.E. 704. However, I.R.E. 704 must be read in light of I.R.E. 702. *State v. Walters*, 120 Idaho 46, 55, 813 P.2d 857, 866 (1991). As this Court has stated, "Rule 704 has not opened the door to all opinions on every subject...." *Id.* at 55, 813 P.2d at 866. Thus, a qualified expert may only give testimony in the form of an opinion or otherwise on evidence which is "beyond the common experiences of most jurors" and will assist them in understanding the evidence or in determining a fact in issue. I.R.E. 702; *State v. Hester*, 114 Idaho 688, 694, 760 P.2d 27, 33 (1988).

The district court's decision to limit Satterwhite's testimony was influenced by cases handling the extent of expert witness testimony in child abuse cases. *Hester* allowed expert testimony as to the behavioral patterns of young victims of incest and al-

lowed the experts to render their opinions as to whether the child was abused. However, the experts' opinion testimony that the defendant committed the crimes was held to be improperly admitted. · The Court stated that expert opinion testimony is admissible up to, but excluding the point at which the expert weighs the evidence, in essence evaluating the circumstances and rendering the same conclusion which the jury is asked to render by its verdict. *Id.* at 696, 760 P.2d at 35. When the expert is, in effect, asked to weigh the evidence before the jury, the opinion testimony impermissibly transcends the "test of jury enlightenment and enter[s] the realm of fact-finding." *Id.* at 695, 760 P.2d at 34.

■■■ Fowler attempted to elicit testimony from Satterwhite as to whether she was a victim of sexual harassment and whether a hostile work environment existed at the Sheriff's Office. Thus, Fowler attempted to have Satterwhite evaluate the environment at the Sheriff's Office and conclude that a reasonable person in Fowler's circumstances would have found the work environment hostile. Comparisons of conduct with that of a reasonable person is one of the most basic functions of a jury. Such testimony would have improperly permitted Satterwhite to weigh the evidence of the case and make the same conclusion which the jury was asked to render by its verdict.

Thus, we conclude that allowing Satterwhite to testify as to whether a reasonable person in Fowler's circumstances would have found the environment hostile would not have assisted the jury. Accordingly, we affirm the district court's decision to limit Satterwhite's testimony.

## V.

## CONCLUSION

The jury instructions misstated the law of sexual harassment by requiring proof that the harassment was based on sex. As a result, this Court holds that the instructions, taken as a whole, did not fairly and adequately state the law and may have had a misleading or prejudicial effect. Accordingly, we vacate and remand for a new trial consistent with this opinion.

Testimony that Fowler was a victim of sexual harassment and that a hostile work environment existed at the Sheriff's Office would have been improper expert testimony. Such testimony was properly excluded pursuant to I.R.E. 702 and this Court affirms the district court's decision to limit Satterwhite's testimony.

Costs on appeal to appellant.

McDEVITT, C.J., and JOHNSON and SCHROEDER, JJ., concur.

TROUT, Justice, concurring in the result in Part IV.A.2.

Because I believe the Court gives a misimpression of the error in the district court's instructions, I concur in the result in Part IV.A.2. In its analysis, the Court gives an unduly restrictive interpretation to the jury instruction in concluding that the "based upon sex" requirement the district court included in the jury instructions was erroneous. For reasons indicated hereafter, I believe another instruction does incorrectly state the law and may have prejudiced or misled the jury.

As the Court correctly states, one element an employee must prove to demonstrate that a hostile work environment exists is:

> that [he or she] was subjected to sexual advances, requests for sexual favors, *or other verbal or physical conduct of a sexual nature.*

*De Los Santos,* 126 Idaho at 967, 895 P.2d at 568 (emphasis added) (citing *Ellison,* 924 F.2d at 875–76). Hence, in order to prevail, an employee must show that the offensive conduct was based on "conduct of a sexual nature." It is difficult for me to understand how the district court's instruction "that the harassment was based upon sex" differs in any material way from this fundamental element of a hostile work environment claim. In fact, the United States Supreme Court expressly reaffirmed that an employee " 'may establish a violation of Title VII by proving that discrimination *based on sex* has created a hostile or abusive work environment.' " *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 25, 114 S.Ct. 367, 372, 126 L.Ed.2d 295 (1993)

(Ginsburg, J. concurring) (emphasis added) (quoting *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986)).

The Court suggests that to permit the "based on sex" language to remain in the instruction, could result in an employee being required to endure a previously accepted type of conduct in the workplace even though any reasonable person would find it objectionable. On the contrary, so long as the offensive behavior was conduct of a sexual nature, whether or not it was motivated in particular by the employee, it would still be actionable. Likewise, the Court's assertion that this instruction would permit offensive conduct so long as it was equally directed at both men and women, is misguided. Again, if the offensive conduct is of a sexual nature, it will be actionable, irrespective of the sex of the offended employee. The "based upon sex" wording in the jury instruction simply denotes the type of conduct being proscribed and not the motivation behind it.

I am admittedly troubled, however, by the district court's attempt in the very next instruction to give further definition to the "based upon sex" requirement for the jury. That instruction, Instruction No. 11, reads as follows: "Plaintiff must prove that the alleged harassment was based upon her sex. That is, plaintiff must prove that because of her gender, she was the object of harassment." The Court does not focus on this language, even though I think it comes much closer to requiring Fowler to prove that she was the motivation for the offensive conduct. I believe the Court correctly points out that Fowler does not have the burden of proving that she was the motivation for the conduct. To the contrary, as I point out above, she must merely show that the offensive language or behavior was conduct of a sexual nature. I believe Instruction No. 11 adds required elements to the plaintiff's case which have no basis in the law. For that reason I concur in the result in this portion of the Court's opinion.