963 P.2d 372

**Delbert LUNDERS and Lexie Lunders, doing business as United National Real Estate, Plaintiffs–Respondents,**

v.

**The ESTATE OF Ellis R. SNYDER, deceased, Bessie A. Snyder, personal representative, and Bessie A. Snyder, in her individual capacity, Defendants–Appellants.**

No. 23422.

Supreme Court of Idaho,
Boise, April 1998 Term.

July 1, 1998.

John H. Bradbury, Lewiston, for Defendants-Appellants.

Dennis L. Albers, Grangeville, for Plaintiffs-Respondents.

TROUT, Chief Justice.

This case involves a commission due under a real estate listing agreement.

## I.

## BACKGROUND

In 1990, Bessie and Ellis Snyder (Bessie, Ellis, or collectively, the Snyders)[1] sold a house and 200 acres in Weippe, Idaho. Delbert Lunders (Delbert) was the broker for the sale through the local United National Real Estate office. The sale was to Delbert's sister and her husband. Apparently there were no problems with this transaction. In 1993, the Snyders decided to sell an additional 320 acres of timber and pasture in Weippe. They again contacted Delbert. The Snyders signed an "Exclusive Authrization [sic] to Sell" agreement. The agreement stated that "United National representative is employed on an exclusive right to sell basis ..." The agreement also provided: "I agree to pay United National forthwith as commission 8 (eight)% percent of the selling price accepted by me." Delbert signed the agreement on the line marked "representative". Finally, the listing agreement indicated a selling price of $260,000.

Delbert and his wife, Lexie (the Lunders), began advertising the property in the local newspaper under the United National Real Estate logo. They also told Lexie's brother, Robert Blewett, also a real estate broker, about the property. Robert Blewett showed the property to his brother, Ron Blewett.

On June 23 or 24, Robert Blewett walked the property with a timber cruiser to get an estimate of the value of the timber. Both Robert Blewett and the cruiser testified that they met and talked to Ellis during the timber cruise.

On June 24, Robert Blewett faxed an offer of $200,000 for the property from Ron Blewett to the Lunders. While there is some dispute as to whether that offer was ever conveyed to the Snyders, there is no question that it was not accepted and that Delbert did not make a record of the rejection of the offer.

The next activity took place two days later, when an earnest money agreement for the sale of the property to Ron Blewett at $240,000 was prepared and taken to the Snyders by Delbert and Lexie. There is again a dispute between the parties as to how that new sales price came to be set, with Lunders claiming that Ellis had called the night before and advised Lexie that he wanted an earnest money agreement prepared for $240,000 with $140,000 down. Bessie testified that the Lunders spent about five hours at their house going over the terms of the earnest money agreement. She also testified that at the time she signed the agreement she was aware that the buyer, Ron Blewett, was Lexie's brother. Ron Blewett accepted the $240,000 offer.

A few days later, the Snyders' grandson learned of the sale. He apparently thought the sale price too low and informed his grandparents of this fact. The next day the Snyders and their grandson met with the Snyders' attorney. Immediately after this meeting, the Snyders attempted to convey an easement to their grandson in order to cloud the title and so stop the sale. After the easement was filed, numerous letters and accusations were exchanged between the parties. Eventually, a meeting was held in which Ron Blewett agreed to rescind the sales agreement. Also during this time, the Snyders' attorney sent the Lunders a letter

---

1. Ellis Snyder died prior to trial and his wife Bessie was substituted as the representative of his estate. Throughout this opinion "the Snyders" will refer collectively to Bessie Snyder and Ellis Snyder or his estate.

stating that the Snyders were terminating the listing agreement.

The Lunders filed suit for the 8% commission alleging breach of contract. The Snyders moved for summary judgment claiming that the listing agreement was with United National Real Estate and not the Lunders. In opposition to the motion, the Lunders filed an affidavit stating that United National was an assumed name of First Horizon Corp., and that First Horizon had filed an affidavit of assumed name in Lewis County which the Lunders also recorded in Clearwater County. In this affidavit, the Lunders stated that they were affiliates and representatives of First Horizon. At one point the affidavit also alleged that the Snyders were aware that the Lunders were agents of United National Real Estate. Based upon the disputed issues of fact, the Snyders' motion for summary judgment was denied.

The Lunders then moved to amend their complaint to add First Horizon Corp., d/b/a United National Real Estate as an additional party plaintiff. This motion was granted. Subsequently, the Snyders filed a motion to amend their answer to include counterclaims for breach of contract, breach of warranty of good faith and fair dealing, fraud, and punitive damages. The district judge granted the motion to amend. The Snyders then reached a settlement with First Horizon which was dismissed with prejudice. Following the dismissal, the Snyders renewed their motion for summary judgment, again asserting that the Lunders individually had no right to a commission based upon the wording of the listing agreement. In opposition to the renewed motion, the Lunders filed another affidavit in which they stated that they also did business under the name United National and had filed an affidavit of assumed name. The district judge granted the Snyders' motion for summary judgment, but gave the Lunders ten days to file affidavits creating a genuine issue of material fact. The Lunders then filed a supplemental affidavit stating that they operated their real estate business on their own behalf and not as agents of First Horizon. The affidavit further stated that Delbert had entered into the listing agreement on his own behalf.

The district judge then denied the Snyders' summary judgment motion.

A jury trial was held. The Snyders moved for a directed verdict at the end of the Lunders' case in chief and that motion was denied. The jury returned a special verdict in favor of the Lunders for $5,760, the portion of the commission they would have received from the sale after deductions for the shares due First Horizon and Robert Blewett as the buyer's broker. The jury found against the Snyders on all claims for relief in their counterclaim. The Snyders then moved for a judgment notwithstanding the verdict (judgment n.o.v.) which was denied. A motion to reconsider was likewise denied. The Lunders then moved for attorney fees under I.C. § 12–120(3). The court awarded attorney fees in the amount of $21,779.85. The Snyders timely appealed.

On appeal, the Snyders argue that the district judge erred in not granting their motions for summary judgment, directed verdict, and judgment n.o.v. The Snyders also challenge the district judge's refusal to give the jury instructions submitted by the Snyders and claim the district judge abused his discretion in allowing Leanne Woslum and Delbert to testify as experts, and by allowing testimony as to what Ellis had said about the sale. Finally, the Snyders challenge the district judge's award of attorney fees.

## II.

### SUMMARY JUDGMENT

Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). On review, this Court uses the same standard as the trial court and "liberally construes the record in the light most favorable to the party opposing the motion, drawing all reasonable inferences and conclusions in that party's favor." *Friel v. Boise City Housing Auth.*, 126 Idaho 484, 485, 887 P.2d 29, 30 (1994) (citations omitted).

The Snyders argue that the district judge erred in not granting summary judgment

because, based on the wording of the listing agreement and Delbert's original affidavit, there was no question that the Lunders were acting only as the agents of First Horizon, d/b/a, United National Real Estate. Thus, the Snyders argue, once First Horizon settled, the district judge should have dismissed the action. The Snyders further contend that the district judge should not have considered the supplemental affidavit filed by Delbert because it directly conflicted with the original affidavit. The Lunders, in contrast, claim there was a genuine issue as to who the parties to the listing agreement were, and so the district judge properly denied the motion for summary judgment.

■ The Snyders argue that the use of the word "representative" in the listing agreement creates an agency relationship and that the term "United National" unambiguously refers to First Horizon Corp. The Snyders further claim that even if the listing agreement was ambiguous, the original affidavit filed by Delbert established that United National referred to First Horizon and that the Lunders were acting solely as the agents of First Horizon.

"The interpretation of a contract's meaning is a question of law when the contract is clear and unambiguous. Where a contract is determined to be ambiguous, the interpretation of the document is a question of fact which focuses upon the intent of the parties." *Ada County Assessor v. Taylor*, 124 Idaho 550, 553, 861 P.2d 1215, 1218 (1993). "If a contract is reasonably subject to conflicting interpretation, it is ambiguous...." *Rutter v. McLaughlin*, 101 Idaho 292, 293, 612 P.2d 135, 136 (1980) (citations omitted). The agreement states that "United National representative is employed...." The agreement does not define either of the terms "representative" or "United National". The Snyders contend that the original affidavit filed by Delbert admits that the term United National refers only to First Horizon and that an agency relationship existed between the Lunders and First Horizon. This argument has some merit if the affidavit is considered on its own. Although the affidavit for the most part refers to the Lunders as representatives or affiliates of First Horizon,

at one point it specifically alleges that the Lunders are in fact agents of First Horizon. Attached to the affidavit, however, was a copy of the agreement between "First Horizon Corporation, d/b/a United National Real Estate (hereinafter referred to as UNITED)" and the Lunders. That agreement clearly stated that the Lunders were not agents of First Horizon and had no authority to bind First Horizon to contracts. In addition, the agreement provided that the Lunders could use the name United in conducting business. Thus, at best, the affidavit and its attachments were contradictory.

■ The Snyders also argue that having admitted to being an agent of First Horizon, the Lunders are estopped from being able to enforce the contract. In their brief, the Snyders repeatedly argue that if First Horizon was the principal then the contract only bound First Horizon. The Snyders cite no authority for this proposition and we can find nothing in Idaho agency law which prohibits an agent from entering into a contract both individually and on behalf of a fully informed principal. Thus, even if we assume on the basis of the affidavits that the Lunders were agents for First Horizon, they could still be parties to the contract.

There is also a question as to whom the term United National in the listing agreement refers. The Snyders contend that based on the first affidavit, United National can only refer to First Horizon and that the Lunders are estopped from claiming otherwise. The original affidavit, however, merely stated that First Horizon had assumed the name United National. The original affidavit did not state that the name United National in the listing agreement referred exclusively to First Horizon. Any implication that only First Horizon could use the name United National was rebutted by the attached agreement which stated that the Lunders, as affiliates, could also use the name United National. Contrary to the Snyders contention, the affidavits did not conflict with each other on this issue. The first affidavit stated that First Horizon did business under the name United National and the subsequent affidavits stated that the Lunders also did business under that name. These two statements are

not mutually exclusive and are in accordance with the agreement between First Horizon and the Lunders.

■ The real question before the district court was not whether the Lunders were the agents of First Horizon, but whether they were parties to the contract. Both First Horizon and the Lunders were doing business under the name United National and both had filed affidavits of assumed name, albeit just before trial. Where the terms of a contract are ambiguous, the focus is on the intent of the parties. *Ada County Assessor v. Taylor,* 124 Idaho 550, 861 P.2d 1215 (1993). Since the parties disagreed as to who the intended parties to the listing agreement were, there was a genuine issue of material fact and so the district court was correct to deny the motion for summary judgment. Finally, it was not an abuse of discretion for the court to allow the filing of supplementary affidavits in order to create a genuine issue of material fact. *State v. Rubbermaid, Inc.,* 129 Idaho 353, 924 P.2d 615 (1996).

### III.

### DIRECTED VERDICT

■ The same standard of review is applied to either a motion for a directed verdict or judgment n.o.v. *Quick v. Crane,* 111 Idaho 759, 727 P.2d 1187 (1986). Upon making the motion, the moving party admits to the truth of all the adverse evidence and any legitimate inference that can be drawn from it. *Id.* at 763, 727 P.2d at 1191. "In determining whether a directed verdict or judgment n.o.v. should have been granted, the appellate court applies the same standard as does the trial court which passed on the motion originally." *Id.* at 764, 727 P.2d at 1192 (citation omitted). This Court, however, exercises free review and does not defer to the findings of the trial court. *Lanham v. Idaho Power, Co.,* 130 Idaho 486, 943 P.2d 912 (1997). On review, this Court "must view all of the evidence and all inferences drawn therefrom in favor of the non-moving party, and decide if there was substantial evidence to justify submitting the case to the jury or . . . that there can be but one conclusion as to the verdict

that reasonable minds could have reached." *Quick,* 111 Idaho at 764, 727 P.2d at 1192 (citations omitted). "Where the evidence conflicts, [this Court] must construe the evidence in favor of the jury verdict." *Lanham,* 130 Idaho at 496, 943 P.2d at 922 (citation omitted).

■ The Snyders use the denial of their motion for a directed verdict to argue that the district judge should have applied the doctrine of quasi estoppel. Quasi estoppel "is designed to prevent a party from reaping an unconscionable advantage, or from imposing an unconscionable disadvantage upon another, by changing positions. Quasi estoppel, unlike equitable estoppel, does not require misrepresentation by one party or actual reliance by the other." *Keesee v. Fetzek,* 111 Idaho 360, 362, 723 P.2d 904, 906 (Ct.App. 1986) (citations omitted). The Snyders argue that the Lunders committed perjury by filing conflicting affidavits and that the Lunders should not be allowed to profit from that perjury. As discussed in the summary judgment section, *supra,* we do not find that the affidavits conflicted in any material way. Even assuming that the affidavits did conflict, they did not impose an unconscionable disadvantage since the Lunders have always maintained that the Snyders owed them a commission under the listing agreement. Because we find the requirements for applying the doctrine of quasi estoppel have not been met, we find no error in the district judge's denial of the Snyders' motion for a directed verdict.

### IV.

### JUDGMENT NOTWITHSTANDING THE VERDICT

■ The Snyders argue that no reasonable jury could have found that the Lunders did not breach their fiduciary duty by failing to get explicit consent to proceed with a sale to a relative, and by failing to adequately value the property. The Snyders contend that Idaho law requires informed and explicit consent before a real estate broker can proceed with a sale to a relative. It is undisputed that the Lunders did not tell the Snyders that there was a potential conflict of interest, suggest that the Snyders

might want to seek independent advice, or get express consent to waive the conflict. In making the argument that all of this was required, the Snyders cite two Washington cases, *Mersky v. Multiple Listing Bureau*, 73 Wash.2d 225, 437 P.2d 897 (1968) and *Meerdink v. Krieger*, 15 Wash.App. 540, 550 P.2d 42 (1976). *Mersky* has never been cited by an Idaho appellate court. *Meerdink* has been cited by Idaho appellate courts, but only for the proposition that brokers must "exercise reasonable care, skill, and judgment in securing the best bargain for [their] principal," *Mallory v. Watt*, 100 Idaho 119, 122, 594 P.2d 629, 631 (1979), and that "[b]reach of the fiduciary duty may result in the broker's loss of a commission and in liability for damages." *Perkins v. Thorpe*, 106 Idaho 138, 141, 676 P.2d 52, 55 (Ct.App. 1984). In Idaho, the rule as set forth by this Court is that "the agent must make a full, fair, and timely disclosure to his principal of all facts within the agent's knowledge which are, or may be, material to the transaction and which might affect the principal's rights and interests or influence his actions." *Mallory*, 100 Idaho at 122, 594 P.2d at 632. Thus, under Idaho case law, no breach of the fiduciary duty occurs so long as the agent fully discloses the potential conflict and acts fairly toward the principal. *Id.*

 At trial, Bessie testified that Lexie told her that Ron Blewett was her brother prior to Bessie signing the earnest money agreement. There was also evidence presented at trial that Ellis knew of the kinship between Ron Blewett and the Lunders. Given this evidence, a reasonable jury could have concluded that the Snyders had timely notice of the relationship and so no breach of fiduciary duty occurred.

 There was also conflicting testimony as to the value of the land. Throughout these proceedings the Snyders claimed that, while they had mentioned an initial selling price of $260,000, they were unskilled in real estate valuation and that the Lunders did nothing to help them value the property or to dissuade them from setting that price. Delbert admitted at trial that he did nothing to contradict the Snyders' valuation. At trial, the Snyders produced expert testimony that the land was undervalued. In response, the Lunders produced a rebuttal expert who criticized the method used by the Snyders' expert, including his failure to account for the fact that a comparison property he used had a house and outbuilding, while the Snyders property was bare land. Lunders' expert also testified that at the time of the sale, timber prices were fluctuating wildly making it difficult to estimate values. The Lunders also produced an expert who testified that the property was not undervalued and Delbert testified as to the reason he thought the property was properly valued. The fact that the evidence is conflicting is not sufficient to warrant granting of a motion for judgment n.o.v. *Lanham*, 130 Idaho at 495–96, 943 P.2d at 921–22. Since reasonable minds could have concluded that Delbert did not breach his duty in valuing the property, the court was correct in denying the motion for judgment n.o.v.

## V.

## JURY INSTRUCTIONS

The standard of review for issues concerning jury instructions is limited to a determination whether the instructions, as a whole, fairly and adequately present the issues and state the law. When the instructions, taken as a whole, do not mislead or prejudice a party, an erroneous instruction does not constitute reversible error.

*Fowler v. Kootenai County*, 128 Idaho 740, 743, 918 P.2d 1185, 1188 (1996) (citation omitted).

 On appeal, the Snyders challenge several of the jury instructions given by the district judge. The Snyders claim that instruction 8C as given, which stated that a contract to pay a real estate commission must be in writing and signed by the owner (I.C. § 9–508), was incomplete because it did not state that the name United National in the listing agreement could only refer to the Lunders in order for the contract to be enforceable. Instruction 8, however, stated that the jury had to find that a written contract existed between the Lunders and the Snyders. Jury instructions must be eval-

uated as a whole. *Fowler*, 128 Idaho 740, 918 P.2d 1185 (1996). Since instruction 8 informed the jury that they had to find the Lunders were parties to the listing agreement, it was not necessary for instruction 8C to repeat this requirement. In addition, the instruction submitted by the Snyders stated that the jury had to find the listing agreement was with the Lunders and not United National. This instruction is misleading because, even though the meaning of the term United National in the agreement was in dispute, the instruction implied that United National could not refer to the Lunders. Because taken together instructions 8 and 8C correctly instructed the jury, we find no error.

█ The Snyders also argue that the district court erred in not instructing the jury on how to construe an ambiguous contract. This argument is without merit. The record does not contain a written instruction submitted by the Snyders on contract construction. The record does reflect that an instruction on contract construction was submitted by the Snyders literally moments before jury instructions were to be given. In addition, the proposed instruction was not submitted in writing, but counsel for the Snyders proposed to simply read it to the jury. The trial transcript reads as follows:

> MR. BRADBURY: I'm sorry, Your Honor, there is one more. I also submitted an instruction, it isn't numbered, *today* that asks for determining objective intent and the part that—*I'd just read it rather than submit it.* The part I wanted given is if a contract term was prepared by one party and is ambiguous—and I'm referring now to the contract being with United National as distinguished from the Lunders or First Horizon—you must resolve the ambiguity by construing the language in a reasonable manner favorable to the party who did not prepare the contract term. So I think that should be included. (emphasis added)

Idaho Rule of Civil Procedure 51(a)(1) states that a court is not required to consider jury instructions not received in writing five days prior to the start of the trial. There is an exception to this rule if the instruction relates to a matter which could not reasonably have been anticipated. In this action, contract construction was a matter which could have been reasonably anticipated. Thus, the district judge did not err in refusing to consider the proposed instruction.

The Snyders also contend that the court did not instruct the jury that the Lunders forfeited their commission if they failed to fulfill their duties as realtors. The Snyders are incorrect. Instruction 11A stated that the Lunders' failure to disclose the kinship would result in the Snyders not being liable for the commission.

Next the Snyders argue that the court erred by not instructing the jury that the Lunders had to obtain explicit consent to proceed with the sale. As discussed previously, the standard argued by the Snyders has not been adopted by Idaho courts. Instruction 10, given by the district judge, tracked the language of *Mallory v. Watt*, 100 Idaho 119, 594 P.2d 629 (1979), and accurately stated the standard adopted by Idaho courts for an agency relationship.

Finally, the Snyders argue that the court erred in not instructing the jury that the Lunders' alleged breach of their fiduciary duty need not be intentional in order to lose their commission. In instructing the jury, the trial court did not state that intent was necessary to find a breach of a broker's fiduciary duty. The Snyders cite no authority for their argument that, in addition to instructing the jury as to the elements necessary to find liability, the court must also instruct the jury as to what elements are not necessary.

Taken as a whole, the instructions given by the district judge accurately presented the issues and stated the law. Therefore, we find no basis for overturning the jury's verdict because of improper jury instructions.

## VI.

### EXPERT TESTIMONY

█ The Snyders argue that the district judge erred when he allowed Leanne Woslum and Delbert to testify as experts regarding the value of the property. Whether a witness is qualified as an expert and the

admission of expert testimony is reviewed for an abuse of discretion. *State v. Winn,* 121 Idaho 850, 828 P.2d 879 (1992). The record demonstrates that Ms. Woslum had been involved in real estate sales since 1978, mostly in California; that her experience in California dealt primarily with agricultural lands; that she moved to Idaho in 1994 and became a licensed real estate broker in Idaho; and that at the time of trial was employed as an associate real estate broker in Idaho. The Snyders argue that Woslum was not qualified because she had only recently moved to Idaho, had only purchased one piece of logged-over property, and had not sold any logged-over property. In support of their argument, the Snyders cite *Sidwell v. William Prym, Inc.,* 112 Idaho 76, 730 P.2d 996 (1986). The Snyders' reliance on *Sidwell* is misplaced. In *Sidwell,* this Court ruled that a professor of metallurgy could not offer an opinion on pin manufacturing, an area in which he had no experience. In the present case, the Snyders argue not that Woslum was inexperienced in the real estate industry, but that her experience was not in Idaho. The Snyders cite no authority to support their argument that an expert's experience must have been gained within the state. The Snyders also do not explain why one must have actually bought and sold the type of property in question in order to value it, and how Woslum's experience valuing agricultural land does not apply to valuing the land in question. The Snyders arguments, for the most part, go to Woslum's credibility rather than her qualifications as an expert. Credibility is a question for the jury. We therefore find that the district court did not abuse its discretion when it found Woslum qualified as an expert on real estate valuation.

■ In regard to Delbert, the Snyders point to two instances where they argue Delbert was allowed to present expert testimony. In the first instance, the testimony was not admitted as expert opinion as to the value of the property, but to establish how Delbert came to the decision that the original price set by the Snyders, $260,000, was rea-

sonable. The district judge clearly ruled that the testimony was admissible for the purpose of establishing why Delbert did what he did and not to prove the truth of the statements. Since the trial court ruled that the testimony was being admitted to show state of mind and not to prove the truth of the statements, it was not substantive testimony from an expert and the Snyders' challenge to its admission is misplaced. The Snyders also challenge the admission of this testimony as hearsay. Since the testimony was not admitted to prove the truth of the matter asserted, but to show state of mind, it was not hearsay and Snyders, challenge under I.R.E. 803(24), likewise, is without merit.

■ The second instance arose in similar circumstances, in that Delbert was explaining how he determined that the price was reasonable. More importantly, counsel for the Snyders did not object to the testimony on the basis that Lunders was not an expert. Rather, counsel objected because Lunders calculations were not based on his own observations. Once it was established that Lunders had seen the property and the trees on it, and was basing his valuation on his observations, the testimony was allowed.[2] Idaho Rule of Evidence 103 requires that the specific grounds for objection must be stated to allege error. Here the testimony was objected to on the basis that Delbert was not testifying from personal knowledge, not that he was unqualified as an expert. Once it was established that he was testifying from personal knowledge, no further objection was made. Since the objection at trial was on a different ground than is now asserted, no error will be attributed to the trial court. I.R.E. 103.

## VII.

### STATEMENTS BY ELLIS SNYDER

■ As previously indicated, Ellis was deceased at the time of trial. Idaho Rule of Evidence 601(b) and I.C. § 9–202 (dead man's statute) prohibit a party making a claim against an estate from testifying as to

---

**2.** If Delbert had, in fact, been testifying as an expert, it would not have been necessary for him to have personally viewed the property and tim-

ber, instead he could have relied on the reports of others. I.R.E. 703.

any unwritten communication with the deceased. Application of a dead man's statute is reviewed for abuse of discretion. *See G & S Investments v. Belman,* 145 Ariz. 258, 700 P.2d 1358 (App.1984). During the Lunders' case in chief, Delbert was allowed to testify that in a telephone conversation, Ellis told him to set the price for the land at $240,000. This testimony clearly violated I.R.E. 601(b) because Delbert was making a claim against Ellis' estate and he was testifying about an unwritten communication with Ellis prior to Ellis' death. Later in the trial, once evidence had been presented on the Snyders' counterclaim, Lexie was also allowed to testify that Ellis told her to set the price at $240,000. This testimony duplicated that of Delbert, except that it was in greater detail. Lexie's testimony was admitted because it was offered to defend against the Snyders' counterclaims. Rule 601(b) does not apply when the testimony is being offered to defend against a counterclaim. *Lowry v. Ireland Bank,* 116 Idaho 708, 779 P.2d 22 (Ct. App.1989). Because Delbert's testimony admitted in violation of I.R.E. 601(b) was repetitive of evidence properly admitted, we find the error by the district judge to be harmless. *See, Dahlberg v. Johnson's Estate,* 70 Idaho 51, 211 P.2d 764 (1949).

■■■■■ The Snyders also challenge the district judge's admission of testimony by Robert Blewett and Jeff Gerfen as violative of the hearsay rule. Admission of testimony by a trial court is reviewed for abuse of discretion. *State v. Zimmerman,* 121 Idaho 971, 829 P.2d 861 (1992). Both Blewett and Gerfen testified that Ellis told Robert Blewett that the first offer on the land was too low and that Ellis was familiar with the members of the Blewett family. The Lunders argue that this testimony was not offered to prove the matters asserted (that the offer was too low, or that Ellis in fact knew the family); rather, these statements were admitted to show that the first offer had been communicated to Ellis and that Ellis had notice of the possible conflict of interest. Thus, the Lunders argue, the testimony was not hearsay and was properly admitted. At trial the district judge did not give a reason for overruling the objection to Blewett's testimony, but when the objection was renewed as to Gerfen's testimony about the same conversation, the district judge indicated that he would allow the testimony in because it was not being offered to prove the truth of the matters stated. While this is a close question, we defer in matters of discretion to the trial courts where the exercise of discretion meets the three-part test set forth in *Sun Valley Shopping Ctr. v. Idaho Power,* 119 Idaho 87, 803 P.2d 993 (1991). Here the district judge demonstrated that he knew the admissibility of the testimony was discretionary, that he acted within the parameters for exercising his discretion and consistently with the applicable legal standards, and that he exercised reason in making the determination to admit the testimony because it was not hearsay. We find no abuse of discretion.

## VIII.

### ATTORNEY FEES

■■■■ The Snyders challenge the district court's award of attorney fees to the Lunders on several grounds. An award of attorney fees under I.C. § 12–120(3) is reviewed for abuse of discretion. *City of Chubbuck v. City of Pocatello,* 127 Idaho 198, 899 P.2d 411 (1995). The Snyders first argue that the district court did not make the type of finding required by I.R.C.P. 54(e)(2). Rule 54(e)(2) by its own words applies only to attorney fees awarded under I.C. § 12–121. *Devine v. Cluff,* 110 Idaho 1, 713 P.2d 437 (Ct.App.1985). Since the Lunders requested attorney fees under I.C. § 12–120(3), Rule 54(e)(2) does not apply.

■■■ The Snyders also contend that the district judge did not do the analysis required under Rule 54(d)(1) in determining the prevailing party. The transcript of the post-trial motions demonstrates that in determining that the Lunders were the prevailing parties, the district judge considered the claims made, the relief sought and the relief obtained in the jury verdict. The district judge, therefore, performed the analysis contemplated by the Rule.

■■■ The Snyders next argue that because the Lunders only recovered 23% of what their complaint sought, the award of attorney fees should be reduced accordingly. The factors to be used in determining the

**700**

amount of attorney fees are set forth in I.R.C.P. 54(e)(3). Although one of the twelve factors listed is "[t]he amount involved and the results obtained," I.R.C.P. 54(e)(3)(G), this factor is given no more weight than any of the others. We agree with the Court of Appeals that the amount of attorney fees need not be proportional to the amount of damages awarded. *Meldco, Inc., v. Hollytex Carpet Mills, Inc.,* 118 Idaho 265, 796 P.2d 142 (Ct.App.1990).

■ The Snyders also claim the district court erred by not reducing the attorney fees to account for the cost of defending against the Snyders' counterclaims. The district judge ruled that because the counterclaims were intertwined with the contract action they could not be separated. Since the counterclaim also provided affirmative defenses to the Lunders' contract action, we do not find that the district judge's ruling was an abuse of discretion.

Finally, the Snyders argue that the Lunders' attorney, Dennis Albers, is estopped from collecting attorney fees because he filed conflicting affidavits. Because we found, as previously indicated, that the affidavits did not conflict in any material way, we do not address this issue.

The Lunders have asked for attorney fees on appeal under I.C. § 12–120(3). This Court has ruled that I.C. § 12–120(3) applies on appeal as well as at trial. *Farm Credit Bank v. Stevenson,* 125 Idaho 270, 869 P.2d 1365 (1994). The Lunders as prevailing parties, therefore, are entitled to reasonable attorney fees.

### IX.

### CONCLUSION

. For the reasons stated above, the jury verdict and the district court's award of attorney fees are hereby affirmed. Costs and reasonable attorney fees on appeal are awarded to the Respondents.

JOHNSON, SILAK, SCHROEDER and WALTERS, JJ., concur.