932 P.2d 889

Sharyl STRONGMAN, Plaintiff–Appellant–Cross Respondent,

v.

The IDAHO POTATO COMMISSION, Mel Anderson and Don Odiorne, Defendants–Respondents–Cross Appellants.

No. 21911.

Supreme Court of Idaho,
Boise, December 1996 Term.

Feb. 25, 1997.

Jim Jones & Associates, Boise, for appellant. Jim Jones, argued.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for respondents. Patricia M. Olsson, argued.

JOHNSON, Justice.

This is an employment case. We announce the standard to be applied in gender-specific, hostile work environment cases, and conclude that there is a genuine issue of material fact that precludes summary judgment on the hostile work environment claim in this case. We also conclude that the employee was an at-will employee and, therefore, not entitled to pursue a claim against the employer based on a transfer of the location of her employment.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS

Sharyl Strongman (the employee) was hired in 1990 and worked for the Idaho Pota-

to Commission (the employer) for three years. The employer told the employee she would get a raise after six months and that twenty to thirty percent of her working time would be consumed in travel. She did not get a raise, and was required to travel more than thirty percent of her working time. On four or five occasions, her immediate supervisor (the supervisor), who was a man, commented on the size of the employee's breasts. The supervisor stopped making these comments after another employee warned him that he could be subject to a sexual harassment suit. The supervisor also told the employee that the employer had wanted to hire a man for the employee's job.

After dinner at a work-related event, the chair of the employer's board of directors (the chair), a man, asked the employee, "where's dessert—your place or mine?" The employee responded, "neither" and said that she was married. The chair did not repeat the comment.

In memos to the supervisor and the employer's executive director (the director), a man, the employee stated that she was subject to more work-related travel time and was required to work more weekends than her male colleagues.

Two former women employees of the employer (the two former employees) stated in affidavits that the director treated women differently than the male employees, that the director talked down to the women and was dismissive of their comments. Also, the two former employees stated in their affidavits that the director was uncomfortable with strong, confident women. One of the two former employees stated that the director often ignored the women employees, that he was defensive and aggressive with confident women, and that he put down the women employees. This affidavit also states that women were made to feel like they did not belong in the employ of the employer, and the former employee resigned because of the way she was treated by the director. The other former employee stated in her affidavit that the director discouraged her from applying for higher level positions with the employer, put her down, and ignored the women employees.

In 1991, another of the employer's supervisors called the employee an "ugly son-of-a-bitch."

In 1992, the employer promoted the employee, gave her a raise, and required her to travel forty to fifty percent of her working time. Also in 1992, the position to which the employee had been promoted was eliminated and replaced with another position. The employee took this new position rather than leaving employment with the employer. This new position required that the employee spend seventy percent of her working time in travel. Because there was talk that the new position was going to be located in Denver, Colorado, the employee stated to the director and the supervisor her concern that the position remain in Boise. The supervisor responded with a note to the employee stating that the job would be "in Boise only." The director stated that as long as he was the executive director, the job would be in Boise. The employee states that the supervisor told her that she could not do this new job because she would get burned out and that the employee was not worth what the employer was paying her.

The employee attempted to work at home as the male employees with similar jobs did. The employer chastised her for doing so. When the employee stated her concerns about being treated differently than the male employees, the supervisor gave her a warning for "gross insubordination."

The employee continued to document instances of her being treated differently than the male employees, and advised the employer's board of directors of this disparate treatment.

In October 1992, the employee hurt her back. After the injury, the director increased the employee's travel to eighty percent of her working time. The director sent certified letters to the employee's home telling her that she needed to come into the office to pick up her mail. The employee replied that her male counterparts had their mail sent to their homes, and the director replied with another certified letter.

After hearing more gossip about the job being relocated to Denver, the employee

talked to the chair. The chair told her that she would be sent to Denver if the director and the supervisor knew she didn't like Denver, and that if she wanted to stay in Boise she should tell the director that she wanted to move to Denver.

The employee had a discussion with two members of the employer's board of directors about her problems with the director and the supervisor. She told them that she was talking to an attorney about these problems. The employee later stated that she was told by one of the board members that "the employment situation with the [employer] was very political, and, if I tried to involve a lawyer in the situation, the [employer] would find a way to force me out." The employee also stated that she was told that the director would move her to Denver to get rid of her.

When the employee was informed of the director's decision to move her position to Denver, she told him that the altitude made her ill and that she wanted to remain in Boise. The director told her that Kansas City could be an alternative location for the new position if the employee could show that she had verified medical problems that prevented her from living in Denver.

The employee told the employer that she suffered from work-related stress, which required her to seek psychological help. Under the advice of a psychologist, the employee took time off work. After the employee came into the office to get her mail, the director wrote her a letter asking for her doctor's credentials because the employee did not appear sick to him. When the employee was unable to travel because she claimed she was ill, the director wrote her a letter stating that her failure to work was "unacceptable."

Upon request by the director, the employee came back to her office after taking time off for illness. The employee wrote a letter to the director telling him that it was her intention not to relocate to Denver or Kansas City. The director replied in writing, stating that he accepted the employee's decision not to relocate, and that he would be advertising the position. The employee was later given one month notice of her termination because of her decision not to relocate.

The employee filed two grievances under the Idaho code of fair employment practices stating that the employee's termination was a violation of her employment agreement and prohibitions against sex discrimination. The grievances were given to the director, who did not pass them on to the chair, but responded that no discrimination was involved in the employee's termination.

The employee sued the employer, the director, and the supervisor alleging violations of state and federal prohibitions against sex discrimination, violation of due process, and breaches of her employment contract. The trial court granted summary judgment dismissing the hostile work environment, breach of contract, and federal discrimination and due process claims. The trial court denied summary judgment on the sex discrimination claims concerning disparate treatment and unlawful retaliation and related claims under 42 U.S.C. § 1983 concerning violation of equal protection of the law. These remaining claims were tried to a jury, which found in favor of the employer, the director, and the supervisor. The employee appealed the summary judgment on the hostile work environment and breach of contract claims, but not the jury verdict.

## II.

## THERE IS A GENUINE ISSUE OF MATERIAL FACT CONCERNING THE HOSTILE WORK ENVIRONMENT CLAIM.

The employee asserts that the trial court should not have granted summary judgment dismissing her hostile work environment claim. We agree.

In *De Los Santos v. J.R. Simplot Co.*, 126 Idaho 963, 895 P.2d 564 (1995), this Court held that a prima facie case for a hostile work environment claim requires that:

1. the employee must be subjected to sexual advances, requests for sexual favors, or other conduct of a sexual nature;

2. this conduct must be unwelcome; and

3. the conduct must be sufficiently severe or pervasive to alter the conditions of the employee's employment and create an abusive working environment.

*Id.* at 967, 895 P.2d at 568; *see also Fowler v. Kootenai County,* 128 Idaho 740, 918 P.2d 1185 (1996) (holding that a hostile work environment under the Idaho Human Rights Act (IHRA) requires that the work environment be both subjectively and objectively perceived as hostile based on totality of the circumstances, and rejecting a "based on sex" requirement); *Paterson v. State,* 128 Idaho 494, 915 P.2d 724 (1996) (holding that a hostile work environment claim can not establish more than one violation of IHRA). "In order to show that a work environment was sufficiently hostile, a plaintiff must show the occurrence of numerous improper acts which establish a pattern of conduct sufficiently severe or pervasive to alter the conditions of employment." *Paterson,* 128 Idaho at 500, 915 P.2d at 730 (citing *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993)).

■ The *De Los Santos* standard was based on a 1991 Ninth Circuit case involving gender-based sexual harassment, *Ellison v. Brady,* 924 F.2d 872 (9th Cir.1991). *De Los Santos,* 126 Idaho at 967, 895 P.2d at 568. The present case involves sex discrimination based on gender-specific discrimination rather than overt sexual conduct. The *De Los Santos* standard is not applicable to hostile work environment claims involving gender-specific discrimination claims.

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 *et. seq.* (Title VII) makes it an unlawful employment practice to discriminate against an individual on the basis of the individual's gender. *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 63, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986). The Equal Employment Opportunity Commission Guidelines, 29 CFR § 1600 *et seq.,* provide that "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Id.* at 65, 106 S.Ct. at 2405. "Hostile environment" claims have been brought for discrimination cases involving race, religion, national origin, and sex. *Id.* at 66, 106 S.Ct. at 2405. "[A]

plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Id.* at 66, 106 S.Ct. at 2405.

In 1993, the U.S. Supreme Court revisited the issue of hostile environment claims under Title VII, reaffirming the *Meritor Savings* holding that conduct that is "severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" based on employees' gender is a violation of Title VII. *Harris,* 510 U.S. at 20–23, 114 S.Ct. at 370 (quoting *Meritor Sav.,* 477 U.S. at 67, 106 S.Ct. at 2405–06). The Court also stated that in determining whether an environment is hostile or abusive, the courts should look at all the circumstances including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23, 114 S.Ct. at 371.

■ Sexual conduct is not a necessary element of a hostile environment claim based on gender-specific discrimination. *See Steiner v. Showboat Operating Co.,* 25 F.3d 1459, 1463 (9th Cir.1994), *cert. denied,* 513 U.S. 1082, 115 S.Ct. 733, 130 L.Ed.2d 636 (1995) ("Sexual or gender-based conduct which is abusive, humiliating, or threatening violates Title VII...."); *Gross v. Burggraf Constr. Co.,* 53 F.3d 1531 (10th Cir.1995) (gender discrimination case under Title VII based on hostile environment); *Hall v. Gus Constr. Co.,* 842 F.2d 1010, 1013–14 (8th Cir.1988) (predicate acts underlying hostile environment claim need not be sexual in nature); *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1482–5 (3d Cir.1990) (offensive conduct does not necessarily require sexual overtones).

In *Harris,* the U.S. Supreme Court stated that a hostile environment exists "when the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " *Harris,* 510 U.S. at 21, 114 S.Ct. at 370 (citations

omitted) (quoting *Meritor Sav.*, 477 U.S. at 65, 67, 106 S.Ct. at 2404, 2405).

■ In the present case, the trial court applied the *Harris* standard for proving hostile work environment and specifically stated that sexual conduct is not necessary for a hostile environment claim. The trial court stated, however, that because the discriminatory conduct was not pervasive, the employee did not make a prima facie case. The court did note that the affidavits of two former employees of the employer demonstrate a "generally hostile work environment."

The evidence presented in connection with the motions for summary judgment indicates that not only was the employee treated differently than her male counterparts in the amount of travelling she was required to do, but that her job was relocated to a city to which the director knew the employee would not move, and that she was criticized for taking sick leave. The affidavits of the two former employees indicate that they were treated differently because of their gender.

The standard of review we apply in determining whether summary judgment should have been granted is well established.

In summary judgment proceedings the facts are to be liberally construed in favor of the party opposing the motion, who is also to be given the benefit of all favorable inferences which might be reasonably drawn from the evidence. Summary judgment shall be granted if the court determines that "the pleadings, depositions, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c).

If the record supports conflicting inferences, or if reasonable minds might reach different conclusions, summary judgment must be denied. In reviewing a lower court's decision on summary judgment, the standard of review is whether there are any genuine issues of material fact and, if not whether the prevailing party was entitled to judgment as a matter of law.

*Wadsworth v. Department of Transp.*, 128 Idaho 439, 441, 915 P.2d 1, 3 (1996).

In reviewing the evidence submitted in connection with the employer's motion for summary judgment in the present case, we liberally construe the facts in favor of the employee and resolve all doubts against the employer. The motion should have been denied if conflicting inferences may be drawn from the evidence submitted, and if reasonable people might have reached different conclusions as to whether there was conduct severe or pervasive enough to create a hostile or abusive work environment based on the employee's gender. *Jacobsen v. City of Rathdrum*, 115 Idaho 266, 271, 766 P.2d 736, 741 (1988) (overturning summary judgment that a city was not wilful and wanton in its conduct); *see also Stansbury v. Blue Cross of Idaho Health Serv., Inc.*, 128 Idaho 682, 918 P.2d 266 (1996) (overturning summary judgment that an employer had reasonably accommodated an employee's disabilities).

Applying these standards, we conclude that there is a genuine issue of material fact concerning whether there was conduct severe or pervasive enough to create a hostile or abusive work environment based on the employee's gender.

## III.

### NEITHER ISSUE PRECLUSION NOR CLAIM PRECLUSION BAR THE EMPLOYEE'S HOSTILE WORK ENVIRONMENT CLAIM.

■ The employer asserts that both issue preclusion and claim preclusion bar the employee's hostile work environment claim. We disagree.

■ The special verdict form asked the jury whether the employee was "intentionally discriminated in the terms, conditions, and opportunities of her employment because of her gender." The jury answered "no." This is the only issue the jury decided. It is a different issue than the one posed by the employee's hostile work environment claim. Issue preclusion bars only the relitigation of issues already actually litigated and decided. *Magic Valley Radiology, P.A. v. Kolouch* 123 Idaho 434, 439, 849 P.2d 107, 112 (1993).

■ We also reject the employer's contention that claim preclusion bars the employee's hostile work environment claim because the employee did not request that the trial court instruct the jury on hostile work environment. The trial court had previously granted summary judgment against the employee on the hostile work environment claim, and it was, therefore, inappropriate for the employee to request an instruction on this claim.

## IV.

### THE EMPLOYEE WAS AN AT-WILL EMPLOYEE.

The employee asserts that she was not an at-will employee. We disagree.

■ Unless there is a contract that specifies the duration of employment or limits termination, employment is at-will. *Mitchell v. Zilog, Inc.*, 125 Idaho 709, 712, 874 P.2d 520, 523 (1994). Limitations on the employment relationship will be implied "when, from all the circumstances surrounding the relationship, a reasonable person could conclude that both parties intended that either party's right to terminate the relationship was limited by the implied in fact agreement." *Id.*

The employee contends that she was more than an at-will employee because (1) the employer has a fair employment practices policy; and (2) the employer had agreed to maintain her employment in Boise.

■ The Idaho code of fair employment practices (the policy) is a grievance procedure by which an employee who feels discriminated against may file a petition with the chair of the employer's board of directors. Under the policy, the employer or a person designated by the employer reviews the allegations and determines the appropriate action. The policy does not in any way limit the employer's right to terminate an employee. Therefore, it does not change the employee's status as an at-will employee.

The supervisor gave the employee a note stating that the position was "located in Boise only", and the director told the employee that the position would remain in Boise for as long as he was the executive director. Also, the job description states that the employee's position is located in Boise. The director later determined that Denver was a more appropriate location for the position because of its central location and status as an airport "hub city."

■ All employees of the employer are "non-classified employees" and are therefore not entitled to the protection of the Idaho personnel system act. I.C. § 67–5303(*o*). I.C. § 22–1207(3) grants the employer the power and duty "[t]o employ and at its pleasure discharge an advertising manager, agents, advertising agencies and such other help as it deems necessary and to outline their powers and duties and fix their compensation." This statute circumscribes the employer's power to contract with its employee's for any form of employment other than at-will employment. Regardless of any representations of the director or the supervisor, this negates any employment by the employee other than at-will employment.

## V.

### CONCLUSION

We vacate the summary judgment dismissing the employee's hostile work environment claim. We affirm the trial court's dismissal of the breach of contract claim.

Because of this result, we find it unnecessary to address the employer's challenges to the trial court's rulings on attorney fees and costs. We remand the case to the trial court for further proceedings.

We award the employee costs on appeal.

McDEVITT, SILAK and SCHROEDER, JJ., and LEGGETT, J. Pro Tem, concur.