# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 37416

| | | |
|---|---|---|
| LYNETTE PATTERSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | **Boise, June 2011 Term** |
| v. | ) | |
| | ) | **2011 Opinion No. 75** |
| STATE OF IDAHO DEPARTMENT OF | ) | |
| HEALTH & WELFARE and JOHN/JANE | ) | **Filed: June 29, 2011** |
| DOES 1 through X, whose true identities are | ) | |
| presently unknown, | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| Defendants-Respondents. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Honorable Michael R. McLaughlin, District Judge.

The judgment of the district court is affirmed.

Johnson & Monteleone, L.L.P., Boise, for appellant. Jason R.N. Monteleone argued.

Honorable Lawrence Wasden, Attorney General, Boise, for respondents. Brian B. Benjamin argued.

---

J. JONES, Justice.

Lynette Patterson appeals the dismissal of her claims against her former employer for alleged violation of the Idaho Human Rights Act and the Idaho Protection of Public Employees Act. We affirm.

## I.

### Factual and Procedural History

This is a constructive discharge case arising under the Idaho Human Rights Act (IHRA), I.C. § 67-5901 *et seq.*, and the Idaho Protection of Public Employees Act (IPPEA), I.C. § 6-2101 *et seq.* Appellant, Lynette Patterson, argues that she was constructively discharged from her position as the Program Supervisor of the Fraud Unit at the Idaho Department of Health and

Welfare (IDHW) due to her complaints regarding an intra-office romance between her supervisor, Mond Warren (Warren), and a lateral employee, Lori Stiles (Stiles). Stiles was the Program Supervisor of the Surveillance Utilization and Review Unit (SUR Unit) and Warren was the direct supervisor for both Stiles and Patterson. Patterson made multiple complaints regarding the relationship and favoritism, which she alleges resulted in her first negative performance review with IDHW, culminating in a constructive discharge.

IDHW had an internal policy discouraging intra-office relationships. Its manual provided the following guidance on such relationships:

> <u>Cohabitation and Romantic Relationships</u>. Cohabitation of and/or romantic relationships between employees and their supervisors and others holding positions of authority over them is not condoned. If such relationships exist, the disciplinary action such as involuntary transfer may be considered. The possibility of intentional, unintentional or perceived abuse of power should be strongly considered in such relationships.

Patterson's first complaint regarding the affair and preferential treatment came in the fall of 2004. Patterson went to Human Resource (HR) Specialist Bethany Zimmerman (Zimmerman) and told her that Warren and Stiles were having an affair and, as a result of the affair, "Warren was not treating her fairly." As a result of this complaint and others, Zimmerman and Warren's direct supervisor, David Butler (Butler), confronted Stiles, but Stiles denied the existence of the affair. Butler and Zimmerman conducted an interview with Warren who similarly denied the allegation. Two months later, Zimmerman again went to Butler to alert him to ongoing rumors regarding the inappropriate relationship and preferential treatment. Thereafter, Butler and another HR employee questioned Warren about the relationship for a second time, but he again denied the affair. However, several days after this second interview, Warren went to Butler and admitted to having had an intimate relationship with Stiles some five years previously (in approximately 1999 or 2000). The relationship was said to have lasted one year, with sporadic intimate encounters thereafter.

After Warren admitted to the romantic relationship, IDHW Civil Rights Department Manager Heidi Graham (Graham) conducted an investigation regarding the complaints of preferential treatment. Graham interviewed Patterson on December 28, 2004. During the interview, Patterson alleged that the SUR Unit received preferential treatment, including better pay, better equipment, access to evidence rooms, more recognition, and preferential disciplining

of subordinate employees. Graham's investigation concluded that Warren and Stiles had engaged in a romantic relationship but also concluded that there was no evidence to support the allegations of preferential treatment. "[A]ny differences complained of by Fraud Unit staff and Ms. Patterson regarding the SUR Unit were either inconsequential, were based on perception and lacked factual bases, were the result of legitimate program needs or were merely territorial rivalries between the two groups."

At the conclusion of the investigation, Employee Relations Manager Monica Young (Young) met with Patterson to discuss the investigation outcome. After explaining Graham's conclusions, Young noted that Patterson was upset that Graham "was lied to and fell for it" and

> wanted to know where she could complain and I told her she could file a complaint with the Idaho Human Rights Commission or consult with an attorney. She told me she knew she would be retaliated against. . . . . She cut me off before I could finish and said she could talk about [Ms. Stiles and Mr. Warren having an affair] if it was impacting her and other's work and she stormed out of my office.

Because Warren had been dishonest about the relationship, a "Notice of Employment Status" letter was placed in his permanent employee file. This letter indicated that "the work environment in the unit is disruptive, dysfunctional, and laden with mistrust, resentment, and anger." However, Warren retained his position as Bureau Chief, and as the supervisor of both Stiles and Patterson.

In February of 2005, Butler attended a Fraud Unit meeting at Patterson's request, wherein staff voiced concerns regarding the alleged relationship and preferential treatment. The Fraud Unit provided Butler with an "Issues Memorandum" describing the concerns of the unit, and Patterson personally provided Butler with an additional document entitled "Summary of Issues Fraud and Sur Units." After further discussions between Butler and Graham, Butler decided not to re-open the investigation because there were no new allegations raised in the complaints.

Patterson had a performance review in May of 2005, approximately three months after the meeting with Butler, wherein she received "Achieves Performance Standards" but it was noted that she had not completed one performance objective.[1] Patterson strenuously objected to the notation and attached a personal explanation to the performance review.

---

[1] Prior to giving Patterson her May 2005 performance review, Zimmerman reviewed the rating and concluded it was appropriate and supported by documentation.

Patterson met with Graham again on May 25, 2005, alleging "that there was retaliation and 'hostility' between the Fraud and SUR Units." Patterson further stated that "things had gotten worse since [Graham's December 2004] investigation had concluded." However, no new investigation resulted from these allegations.

On September 27, 2006, Patterson met with the new Director of IDHW, Richard Armstrong (Armstrong), to discuss her allegations of preferential treatment. Patterson told Armstrong that she "felt discriminated against in that she and the employees in her Fraud unit did not get an equal amount of resources (as the SUR unit) and were not getting the recognition of good work that she felt was being done by the members in the Fraud unit." She also made allegations of unequal pay. Following his meeting with Patterson, Armstrong met separately with Butler and Graham to discuss Patterson's complaints. He met with Patterson again on November 22, 2006, indicating that her concerns had been adequately investigated and, since no new incidents had occurred, he did not intend to reopen the previous investigation.

Approximately four months later, Warren gave Patterson a draft performance evaluation which rated her as "Does Not Achieve Performance Standards." This document specifically identified staff involvement in searches and continued use of deferred prosecution agreements as the basis for the negative review. This document was provided to Patterson on March 16, 2007, via an e-mail in which Warren requested a 2:00 p.m. meeting to discuss the evaluation. Patterson typed a resignation note before attending the afternoon meeting. The note stated, in relevant part:

> Please consider this as my resignation from the Department of Health and Welfare Fraud Unit. After 25 ½ years with the state, I can no longer work under these conditions. The work environment has become increasingly hostile over the past few years. Retaliation is becoming unbearable. For health concerns and my own peace of mind, I am resigning effect[ive] March 30, 2007 and will be taking vacation from now until then.
>
> I have left keys, badges, ID etc. with Susan Slade Grossl.

Patterson did not return to work after March 16, 2007.[2]

On September 14, 2007, Patterson filed a complaint with the Idaho Human Rights Commission (IHRC), alleging sexual discrimination and retaliation. On September 25, 2007,

---

[2] By precipitously resigning, Patterson elected to forego pursuit of statutory remedial procedures available to state employees. Employee problem solving and due process procedures are mandated by I.C. § 67-5315 and provided for in Rule 200 of the Rules of the Division of Human Resources & Idaho Personnel Commission (IDAPA 15.04.01.200).

Patterson filed her initial complaint in district court alleging violations of the IPPEA. Subsequently, Patterson amended this complaint by adding an unlawful retaliation claim in violation of the IHRA. IDHW moved for summary judgment on both claims, which the court granted because: (1) Patterson did not file her IPPEA claim within 180 days of her constructive discharge on March 16, 2007; and (2) Patterson failed to demonstrate that she engaged in protected activity in order to sustain her IHRA claim. Patterson moved for reconsideration on the IHRA claim, but the district court denied her motion. She timely appealed to this Court.

## II.

## Issues on Appeal

I.      Is Patterson's IPPEA claim time-barred?

II.     Did the district court err in determining that Patterson failed to demonstrate that she was engaging in protected activity under the IHRA?

## III.

## Discussion

### A. Standard of Review

This Court reviews the grant of a motion for summary judgment on the same standard used by the district court. *Mackay v. Four Rivers Packing Co.*, 145 Idaho 408, 410, 179 P.3d 1064, 1066 (2008). Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c). Disputed facts are liberally construed in favor of the nonmoving party and "all reasonable inferences that can be drawn from the record are to be drawn in favor of the nonmoving party." *Mackay*, 145 Idaho at 410, 179 P.3d at 1066. "Summary judgment is appropriate where the nonmoving party bearing the burden of proof fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.*

### B. Patterson's IPPEA claim is time-barred.

Patterson contends the district court erred in dismissing her IPPEA claim on statute of limitations grounds, both because IDHW waived any statute of limitations defense and because, even if it did not, her complaint on this claim was timely filed. Patterson first argues IDHW waived any statute of limitations defense regarding her IPPEA claim because it was not pleaded as an affirmative defense in IDHW's initial answer to her complaint. Patterson next argues that,

even if the defense was not waived, her complaint was timely filed and the district court erred in using the notification date of her resignation, on March 16, 2007, rather than the effective date of her resignation, on March 30, 2007, as the appropriate accrual date for her IPPEA claim. IDHW argues it properly raised the statute of limitations defense at the time of the summary judgment proceedings and, therefore, never waived the issue. Additionally, IDHW argues that the relevant accrual date for Patterson's IPPEA claim is the date she provided her notice of resignation because she communicated her intent to resign on that date, and it was the last time IDHW could have engaged in unlawful employment activity.

The district court ruled that IDHW did not waive its statute of limitation defense, even though it was not pleaded in the answer to the complaint, because Patterson had the opportunity to fully argue the issue before trial. The court then determined that Patterson's constructive discharge claim was untimely filed on September 25, 2007, because it accrued on March 16, 2007, when the "atmosphere at work was so intolerable she could stay no longer and had to resign." The court rejected Patterson's allegation that the adverse actions constituted a continuing incident, culminating with the effective date of her resignation on March 30, 2007, because the constructive discharge was a discrete act.

Idaho Rule of Civil Procedure 8(c) provides that "[i]n pleading to a preceding pleading, a party shall set forth affirmatively" a statute of limitations defense. This Court has interpreted IRCP 8(c) as requiring affirmative defenses to be plead, but without identifying the consequences for failing to do so. *Fuhriman v. State, Dep't of Transp.*, 143 Idaho 800, 803-04, 153 P.3d 480, 483-84 (2007). In *Fuhriman*, the Court held that the State's failure to raise the affirmative defense of statutory employer immunity, until filing its memorandum in support of its motion for summary judgment, was not fatal to that defense. *Id.* at 804, 153 P.3d at 484. The Court determined that because the State's memorandum alerted the appellants to the affirmative defense, and the appellants responded to this argument in reply briefing, as well as in oral argument before the district court, the defense had not been waived for failing to plead it in the initial answer. *Id. See also Bluestone v. Mathewson*, 103 Idaho 453, 455, 649 P.2d 1209, 1211 (1982) (finding no waiver of a statute of frauds defense where it was raised "for the first time in the summary judgment motion even though the reply to the counterclaim has been filed."). Therefore, pursuant to *Fuhriman*, a party does not waive an affirmative defense for failing to raise it in the initial answer, so long as it is raised before trial and the opposing party has time to

respond in briefing and oral argument. Like the State in *Fuhriman*, IDHW raised its statute of limitations affirmative defense in its memorandum in support of its motion for summary judgment, and Patterson responded to this defense in her opposition memorandum. Consequently, IDHW did not waive its statute of limitations defense regarding Patterson's IPPEA claim.[3]

We next consider whether Patterson's claim was timely filed. The IPPEA seeks to protect the integrity of the government "by providing a legal cause of action for public employees who experience adverse action from their employer as a result of reporting waste and violations of a law, rule or regulation." *Van v. Portneuf Med. Ctr.*, 147 Idaho 552, 557, 212 P.3d 982, 987 (2009). To establish an IPPEA claim, a plaintiff must establish, by a preponderance of the evidence, "that the employee has suffered an adverse action because the employee, or a person acting on his behalf engaged or intended to engage in an activity protected under section 6-2104, Idaho Code." I.C. § 6-2105(4). "An employee who alleges a violation of this chapter may bring a civil action for appropriate injunctive relief or actual damages, or both, within one hundred eighty (180) days after the occurrence of the alleged violation of this chapter." I.C. § 6-2105(2).

Where the alleged adverse action is a constructive discharge, a plaintiff must prove that "working conditions bec[a]me so intolerable that a reasonable person in the employee's position would have felt compelled to resign[.]" *Waterman v. Nationwide Mut. Ins. Co.*, 146 Idaho 667, 672, 201 P.3d 640, 645 (2009). Assuming that Patterson met this evidentiary burden, this Court must determine whether her claim for constructive discharge arose with her resignation notice on March 16, or with the effective date of her termination on March 30. We hold that Patterson's IPPEA claim is untimely because her claim for constructive discharge arose on March 16 when she provided unequivocal notice of her intent to resign.

The Ninth Circuit has held that in constructive discharge cases, it is the date of resignation that starts the relevant statute of limitations period.

> We hold . . . that the date of discharge triggers the limitations period in a constructive discharge case, just as in all other cases of wrongful discharge. Constructive discharge is, indeed, just one form of wrongful discharge. The fact

[3] Patterson cites *Mortensen v. Stewart Title Guar. Co.*, 149 Idaho 437, 443, 235 P.3d 387, 393 (2010) for the proposition that unpleaded *claims* cannot be preserved for appeal. However, *Mortensen* clearly addresses claims, rather than affirmative defenses, and this Court has stated that the *Fuhriman* and *Bluestone* cases speak only to "when an affirmative defense may be properly raised and thus provides no basis for a different result" regarding a cause of action not raised in the initial pleadings. *Edmondson v. Shearer Lumber Prods.*, 139 Idaho 172, 178-79, 75 P.3d 733, 739-40 (2003). Thus, *Mortensen* is of no consequence to the situation at issue in this case.

that the actual act of terminating employment is initiated by the employee, who concludes that she is compelled to leave as a result of the employer's actions, rather than by the employer directly does not change the fact that the employee has been discharged. Therefore, if the date of [plaintiff's] quitting falls within the relevant period of limitations, as it unquestionably does here, her claim is timely filed.

*Draper v. Coeur Rochester, Inc*., 147 F.3d 1104, 1110 (9th Cir. 1998).

Similarly, the Second Circuit has expanded on this holding and determined that a constructive discharge claim accrues on the date the employee gives "definite notice of her intention to retire," rather than upon the effective date of that resignation. *Flaherty v. Metromail Corp.*, 235 F.3d 133, 138 (2d Cir. 2000). In *Flaherty*, the plaintiff submitted a formal statement to her employer on June 12, 1997, that she would be retiring from the corporation effective November 1, 1997. *Id.* at 139. The court held that the June 12 notification date was the date that the plaintiff "effectively communicated her intention to resign" and was, therefore, the relevant date for her constructive discharge claim. *Id.*

Like the plaintiff in *Flaherty*, wherein the court treated the resignation notice date as the appropriate accrual of the plaintiff's cause of action, rather than the effective date of her termination, Patterson gave IDHW definitive notice of her intent to resign on March 16, 2007, even though that resignation was not to become effective until March 30, 2007. Specifically, Patterson's resignation note stated that she could no longer work for IDHW due to the unbearable conditions to which she was subjected and that she would take vacation time until the effective date of her resignation. Indeed, Patterson turned in her keys and badge and did not return to work after her March 16 notice. IDHW was in no position to subject her to additional discriminatory treatment after that date. While Patterson points to documents created by IDHW, identifying her termination date as March 30, 2007, to establish her discharge date, the accrual of the constructive discharge claim is based on when the work environment became unbearable for the *employee*, not when the employer believed she was no longer employed there. Therefore, we affirm the decision of the district court that Patterson's IPPEA claim was time-barred under I.C. § 6-2105(2).

**C. The district court did not err in determining that Patterson failed to demonstrate she was engaging in protected activity under the IHRA.**

Patterson alleges that her supervisor's intra-office affair and consequent favoritism toward his paramour's work group created a hostile work environment, that she opposed the actions creating that environment, and that, as a consequence, she was retaliated against in violation of the IHRA. She argues that, even if the affair and favoritism were not legally sufficient to constitute a hostile work environment, she engaged in protected activity in opposing such actions because she had a reasonable and good faith belief that they were violative of the IHRA. IDHW contends that the district court did not err in determining otherwise because overwhelming case law holds that paramour favoritism is not violative of Title VII and, therefore, opposition to such activity is not protected activity under the IHRA. The district court concluded, as a matter of law, that Patterson could not have reasonably believed her complaints regarding the intra-office romance and alleged favoritism amounted to protected activity under the opposition clause of the IHRA and Title VII because case law overwhelmingly holds that paramour favoritism is not proscribed activity.

The IHRA not only prohibits discriminatory actions against persons in protected groups, but also prohibits retaliation against persons who oppose such actions. Idaho Code § 67-5911 provides:

> It shall be unlawful for a person or any business entity subject to regulation by this chapter to discriminate against any individual because he or she has *opposed* any practice made unlawful by this chapter or because such individual has made a charge, testified, assisted, or *participated* in any manner in an investigation, proceeding, or litigation under this chapter.

(emphasis added). A claim under I.C. § 67-5911 is commonly referred to as a retaliation cause of action. There is no Idaho case law regarding a retaliation claim based on allegations of paramour favoritism. However, "[t]his Court has previously determined that the legislative intent reflected in I.C. § 67-5901 allows our state courts to look to federal law for guidance in the interpretation of the state provisions." *Mackay*, 145 Idaho at 413, 179 P.3d at 1069.

In order to make a prima facie retaliation claim, the Ninth Circuit Court of Appeals requires a plaintiff to demonstrate that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action. *See E.E.O.C. v. Luce, Forward, Hamilton & Scripps*, 303 F.3d 994,

1005 (9th Cir. 2002). "Protected activities include: (1) opposing an unlawful employment practice; and (2) participating in a statutorily authorized proceeding." *Id.*

The opposition clause protects employees who both subjectively and reasonably believe that they are opposing activity that violates Title VII. *Little v. United Technologies Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997). In this case, it is undisputed that Patterson subjectively believed that she engaged in protected opposition activity.[4] Therefore, only the objective reasonableness of her belief is at issue before this Court.

In determining whether it was objectively reasonable for Patterson to believe that she was engaging in protected opposition activity, we first consider whether a paramour relationship resulting in favoritism toward the paramour, in and of itself, constitutes unlawful conduct. The IHRA prohibits employers from discharging or otherwise discriminating against employees because of their race, color, religion, sex or national origin. I.C. § 67-5909. The relevant portion of this provision provides:

> It shall be a prohibited act to discriminate against a person because of, or on a basis of, race, color, religion, sex or national origin, in any of the following subsections. . . .
>
> (1) For an employer . . . to discharge, or to otherwise discriminate against an individual with respect to compensation or the terms, conditions or privileges of employment or to reduce the wage of any employee in order to comply with this chapter . . . .

*Id.* Unlawful discrimination on the basis of sex includes the creation of a hostile work environment. "In order to show that a work environment is sufficiently hostile, a plaintiff must show the occurrence of numerous improper acts which establish a pattern of conduct sufficiently severe or pervasive to alter the conditions of employment." *Frazier v. J.R. Simplot Co.,* 136 Idaho 100, 105, 29 P.3d 936, 941 (2001). "[T]he standard to prove [a] hostile environment is that the environment is both subjectively and objectively perceived as hostile based on a totality of the circumstances." *Jeremiah v. Yanke Mach. Shop, Inc.*, 131 Idaho 242, 248, 953 P.2d 992, 998 (1998) (internal quotation omitted).

Patterson claims that the affair and favoritism created a hostile work environment. However, based on our review of the record, we conclude that the activity alleged by Patterson is

---

[4] The district court noted that "[t]he Court fully credits the Plaintiff's assertion throughout this litigation that she believed in good faith the conduct she opposed was unlawful."

not sufficient to constitute a hostile work environment. Her supervisor's conduct certainly violated IDHW's policy regarding intra-office relationships, and could well have resulted in favorable treatment being received by Stiles and the SUR Unit, as Patterson alleges. However, as IDHW points out, the favoritism affected all concerned on a gender-neutral basis. That is, Patterson provides no evidence that either the romantic relationship or the alleged favoritism was directed against, or that the results had an unfavorable effect upon, a person or group protected by the IHRA.

Although none of this Court's decisions have dealt specifically with a paramour favoritism case, previous cases have dealt with the issue of hostile work environment. In *Fowler v. Kootenai County*, 128 Idaho 740, 918 P.2d 1185 (1996), while we rejected a contention that "if an employer equally abuses men and women no claim would arise [under the IHRA] because both sexes are accorded equal treatment," we held that the effect of abusive activity upon persons in a protected group is the critical factor in determining whether a hostile work environment has been shown. *Id.* at 744-45, 918 P.2d at 1189-90. We stated, "Title VII is aimed at the consequences or effects of an employment practice and not at the . . . motivation of co-workers or employers." *Id.* (quoting *Ellison v. Brady*, 924 F.2d 872, 880 (9th Cir. 1991)). In this case, Patterson has failed to present facts to show that the effect of the affair and alleged favoritism on her or other women in her unit was such that it created a hostile work environment. While the affidavit she submitted in opposition to IDHW's motion for summary judgment refers to and incorporates a large volume of meeting notes, emails, pay records, and other documents, and asserts a number of instances of favoritism toward the SUR Unit, it fails to provide narrative testimony as to how Patterson or other women were adversely impacted by the same. Patterson's affidavit provides little guidance regarding the sequence of events that led to her unfavorable performance review and resignation.

*Strongman v. Idaho Potato Commission*, 129 Idaho 766, 932 P.2d 889 (1997), also dealt with a hostile work environment claim. There, the Court held that, "[s]exual conduct is not a necessary element of a hostile environment claim based on gender-specific discrimination." *Id.* at 770, 932 P.2d at 893. In that case, the Court held that the district court erred in dismissing the plaintiff's hostile work environment claim on summary judgment because the plaintiff had presented evidence indicating "that not only was [she] treated differently than her male counterparts in the amount of travelling she was required to do, but that her job was relocated to

a city to which the director knew the employee would not move, and that she was criticized for taking sick leave." *Id.* at 771, 932 P.2d at 894. Once again, Patterson has failed to present specific facts showing that she or other members of a protected group were subjected to abusive treatment that would constitute a hostile work environment. What her allegations boil down to, in essence, is that her supervisor had a relationship with a lateral employee, resulting in more favorable treatment for the paramour and her unit.

Where courts in other jurisdiction have dealt specifically with the issue, the overwhelming weight of the decisions is that paramour favoritism does not violate Title VII. *See DeCintio v. Westchester County Med. Ctr.*, 807 F.2d 304, 308 (2d Cir. 1986) (finding that paramour favoritism does not constitute gender discrimination because it affects men and women equally). While the federal Equal Employment Opportunities Commission and some federal courts recognize limited exceptions to this rule where (1) paramour favoritism is a result of coerced sexual behavior, in which case, the quid pro quo analysis of sexual harassment would apply; or (2) the paramour activity is so widespread that there is an expectation of sexual favors in exchange for advancement or promotion in the workplace, Patterson's allegations do not fall within either of these limited exceptions and, therefore, a claim for hostile work environment would not lie here. *See* EEOC, *Policy Guidance on Employer Liability Under Title VII for Sexual Favoritism*, No. 915.048, 1990 WL 1104702 at *2-3 (Jan. 12, 1990).

However, that is not the end of our inquiry. Patterson's claim is not for a hostile work environment but, rather, for retaliation as a result of her complaints about the work environment resulting from the affair and favoritism. Because a hostile work environment claim is distinct from a retaliation claim, some courts have found that, even where a plaintiff fails to demonstrate a hostile work environment, the plaintiff's retaliation claim may proceed to the jury based on her reasonable belief that she engaged in protected activity. *See Drinkwater v. Union Carbide Corp.*, 904 F.2d 853, 865-66 (3rd Cir. 1990) (despite the fact that plaintiff failed to demonstrate a hostile work environment claim, the court allowed her retaliation claim to go to the jury because she believed the activity was prohibited and because there was case law in existence at the time of her opposition activity that arguably supported the reasonableness of her belief that paramour favoritism violated Title VII). As articulated in *United Technologies*:

> [a] plaintiff can establish a prima facie case of retaliation under the opposition clause of Title VII if he shows that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices . . . . It is critical

to emphasize that a plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that he subjectively (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was objectively reasonable in light of the facts and record presented. It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

103 F.3d at 960 (emphasis omitted)

Patterson argues her belief that she was engaging in protected activity was objectively reasonable because: (1) she filed a complaint with the IHRC and she personally complained and participated in the internal investigation regarding the affair and alleged preferential treatment and (2) IDHW treated her complaints as potential violations of Title VII of the federal Civil Rights Act of 1964 by referring Patterson to the civil rights investigator and by providing her training materials indicating that paramour favoritism could be illegal. IDHW argues that Patterson's factual allegations do not support the reasonableness of her belief because: (1) Patterson's complaints to IDHW, as well as her IHRC complaint, do not support a finding that her belief was objectively reasonable; (2) the IDHW training materials provide that discrimination must be because of the victim's gender and these materials cannot create a heightened standard for Title VII violations; (3) Patterson's allegations of unequal pay affected both the men and women in Patterson's fraud unit equally; and (4) Patterson cannot form an objective belief that her activity is protected based on discussions with third parties.

The district court agreed with the arguments advanced by IDHW, finding that Patterson's belief was not objectively reasonable because: (1) existing substantive law was to the contrary; (2) employee training materials that are more restrictive than Title VII do not create a reasonable belief on the part of an employee that conduct violates Title VII; and (3) an employee cannot base her good faith belief that an employer has engaged in unlawful employment practices based on the good faith belief of another employee. The district court also pointed out that Patterson had failed to demonstrate that the alleged favoritism was due to plaintiff's, or any other person's, gender. As the court stated, "In sum, the Court is not aware of any evidence in the record demonstrating that the Plaintiff drew a connection between the affair and the favoritism and a violation of the IHRA, be it gender or sex discrimination or otherwise. In fact, common sense

dictates that any adverse actions stemming from the affair and favoritism of the SUR Unit would have fallen upon male and female fraud investigators alike."

A critical element of the inquiry regarding objective reasonableness of an employee's belief that she was participating in a protected activity is the existing case law at the time of the incident. In *Drinkwater*, the plaintiff's claim was allowed to proceed because of an existing decision favorable to her position. The *Drinkwater* court noted, however, that that holding had been vacated after Drinkwater's case arose. *Id.* at 865-66. The only case favorable to her position that Patterson cited was decided a month and a half after her letter of resignation and could not have been relied upon in making her determination as to the reasonableness of her belief that she was engaging in protected activity. *See Alaniz v. Peppercorn*, W.L. 1299804 (E. Dist. Cal. May 3, 2007). Because the great weight of the case law did not support Patterson's position, she had no grounds to believe that she was engaging in protected activity. *See Luce*, 303 F.3d at 1006 (a plaintiff's belief that she engaged in protected opposition activity cannot be reasonable when faced with voluminous case law to the contrary); *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999) ("The objective reasonableness of an employee's belief that her employer has engaged in an unlawful employment practice must be measured against existing substantive law."). The district court did not err in dismissing Patterson's IHRA claim.

Patterson also argues that her activities were protected activity under the participation clause of the IHRA and Title VII because she complained to human resources personnel, as well as to the civil rights investigator at IDHW, regarding the alleged favoritism and retaliatory treatment. An employee can engage in protected activity by participating in the statutory proceedings created by Congress to assist in Title VII violations. "Title VII . . . make[s] it unlawful for an employer to discriminate or retaliate against an employee or an applicant for employment because that person has made a charge, testified, assisted, or participated, in any manner in a proceeding." *Luce*, 303 F.3d at 1006 (internal quotation omitted). A "proceeding includes instituting a civil action," and also extends to an employee "who informs his employer of his intention to participate in a statutory proceeding, even if he has not yet done so." *Id.* at 1006-07 (internal quotation omitted).

Although Patterson argues in her reply brief that she was entitled to relief under the participation clause, she did not make the same argument in her opening brief. It is true that she made reference to having participated in the investigations precipitated by her complaints, but

her argument was premised on the opposition clause. Her arguments before the district court were premised on the opposition clause and that is the basis upon which the district court appears to have ruled. "It is well established that in order for an issue to be raised on appeal, the record must reveal an adverse ruling which forms the basis for an assignment of error." *Krempasky v. Nez Perce County Planning & Zoning*, 150 Idaho 231, 236, 245 P.3d 983, 988 (2010). "Issues not raised below but raised for the first time on appeal will not be considered or reviewed". *Id.* Further, "In order to be considered by this Court, the appellant is required to identify legal issues and provide authorities supporting the arguments in the opening brief." *Hogg v. Wolske*, 142 Idaho 549, 557, 130 P.3d 1087, 1095 (2006) (citing I.A.R. 35). This requirement ensures that the respondent has an opportunity to respond to the appellant's arguments. *See Suitts v. Nix,* 141 Idaho 706, 708, 117 P.3d 120, 122 (2005). Patterson failed to raise her participation clause argument in her opening brief, which denied IDHW the opportunity to respond.

## III.
## Conclusion

We affirm the judgment of the district court.[5] Costs to IDHW.


Chief Justice EISMANN, and Justices BURDICK, W. JONES and HORTON CONCUR.

---

[5] The district court's judgment contained a Rule 54(b) certificate stating that the judgment was final with regard to the issues dealt with therein. It is unclear why a Rule 54(b) certification was required because the complaint only raised the IPPEA and IHRA claims, both of which were dismissed upon summary judgment. It appears the Rule 54(b) certificate was superfluous, as all issues were resolved by the judgment and the case has been fully disposed of on appeal.